# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN THOMAS HALL, JR., )
                 Plaintiff, )     Civil Action No. 12-130 Erie
)
v. )
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
                 Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., Chief District Judge.

## I.    INTRODUCTION

John Thomas Hall, Jr. ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff protectively filed his application on March 31, 2009, alleging disability since December 2, 2008 due to a back impairment and leg and foot numbness (AR 136-139; 163).[1] His applications were denied (AR 50-54), and following a hearing held on July 30, 2010 (AR 19-45), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on August 26, 2010 (AR 10-18). Plaintiff's request for review by the Appeals Council was denied (AR 1-4), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). He filed his complaint challenging the ALJ's decision, and presently pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion will be denied and the Commissioner's motion will be granted.

---

[1] References to the administrative record [ECF No. 5], will be designated by the citation "(AR ___)".

1

## II. BACKGROUND

Plaintiff was 41 years old on the date of the ALJ's decision (AR 16). He did not finish high school but earned a General Educational Development ("GED") diploma (AR 171). He has past relevant work experience as a maintenance technician in a plastics shop from 1990 until December 2008 (AR 164).

The medical evidence prior to Plaintiff's alleged disability onset date reveals that he suffered work-related back injuries in January and February 2002 (AR 192; 196). In May 2002, Plaintiff began treatment with Jithendra Rai, M.D., a pain management specialist, who administered lumbar facet injections (AR 348-367). On February 20, 2004, Daniel Loesch, M.D., performed lumbar sacral fusion surgery at the L5-S1 level (AR 210-214). Plaintiff began physical therapy on June 3, 2004 with Wade Schauer, Ph.D. MPT (AR 396). On August 12, 2004, Plaintiff reported that he was "finally seeing improvement" but he continued to complain of back pain (AR 437). On November 12, 2004, Plaintiff reported that his back pain flared up when he overworked (AR 477).

Plaintiff continued with physical therapy, and on January 3, 2005 Mr. Schauer reported that Plaintiff's progress was slow but he was working on attending consistently (AR 501). Mr. Schauer noted that Plaintiff's attendance at therapy was "fairly good", but he missed sessions due to vacation or family matters (AR 501). On May 3, 2005, Mr. Schauer reported that Plaintiff made progress when he attended therapy (AR 542).

On May 6, 2005, Dr. Loesch performed a second surgery, consisting of an L4-L5 lumbar interbody fusion (AR 274-281). Plaintiff had "good relief" following surgery, and although his back bothered him somewhat, he reported that his leg pain was a "thousand percent better" (AR 339-340). In June 2005, a CT scan of the Plaintiff's lumbar spine showed that post-operative changes were in a "satisfactory healing process" (AR 322). Plaintiff returned to physical therapy on August 29, 2005 and reported that he was not taking any medication for pain (AR 551). On September 29, 2005, Plaintiff reported that his leg pain was better, and at times had no pain (AR 564). On October, 29, 2005, Mr. Schauer reported that Plaintiff was slowly making gains and increasing his activities (AR 581).

2

On January 10, 2006, Plaintiff's lumbar spine x-rays showed that his spine was stable (AR 324). At his physical therapy session on February 28, 2006, Plaintiff reported that working irritated his back (AR 632). At Plaintiff's session on March 29, 2006, Mr. Schauer noted that he was awaiting approval from Plaintiff's physician to begin more aggressive therapy (AR 647). Plaintiff's CT scan dated April 4, 2006 remained unchanged from his previous scan (AR 324-325). On April 29, 2006, Mr. Schauer recommended a work hardening program for the Plaintiff (AR 656). Plaintiff returned to Dr. Loesch on July 17, 2006, who reported that Plaintiff's EMG performed by Dr. Wheeling was "totally unremarkable" and there was "nothing to account for his radiculopathy" (AR 745). Dr. Loesch recommended Plaintiff undergo a Functional Capacity Evaluation (AR 745). On July 21, 2006, Plaintiff sought emergency room treatment for back pain after weed whacking (AR 376-383). He denied taking any medications (AR 380). Plaintiff was diagnosed with acute lumbar radiculopathy and prescribed Flexeril and Motrin (AR 382). On July 29, 2006, Mr. Schauer reported that Plaintiff was doing better, but he was discharged from physical therapy after his insurance company purchased an electrical stimulation unit for home use (AR 674).

Plaintiff followed up with Dr. Loesch concerning the removal of the instrumentalities placed in his spine on September 4, 2006 (AR 386-387). Dr. Loesch removed the instrumentation on September 7, 2006, and post-surgery, Plaintiff had no new neurological deficits (AR 391-392; 748). Plaintiff returned to physical therapy on October 13, 2006 and reported that he was not taking any medication for pain (AR 688). Plaintiff's lumbar MRI dated November 18, 2006, revealed post-operative changes at L4-5 and L5-S1, with mild facet ligamentous change posteriorly at L3-4 (AR 700). There was good decompression of the canal with no evidence of nerve root impingement or canal stenosis (AR 700). When seen by Dr. Loesch on November 21, 2006, Plaintiff stated that his back felt much better since the hardware was removed, but he complained of chronic low back and bilateral leg pain (AR 750). Plaintiff reported that physical therapy and a TENS unit helped his symptoms (AR 750). Dr. Loesch found that Plaintiff was neurologically stable (AR 750). On December 1, 2006, Mr. Schauer

reported that Plaintiff had some relief from therapy, but Plaintiff decided to discontinue therapy since he had access to an electrical stimulation unit (AR 697).

On November 12, 2007, Plaintiff was evaluated by James Kang, M.D. for his complaints of low back pain (AR 710-712). On physical examination, Plaintiff's straight leg raising test was negative, his motor strength was 5/5 bilaterally in his lower extremities, and his sensation was diminished in the left L5 distribution, but his reflexes were normal (AR 710). Dr. Kang found he had no hip pain on range of motion testing (AR 71). He noted that x-rays showed no evidence of spondylosis, and an MRI showed no evidence of central stenosis (AR 710). Dr. Kang noted there was a nonunion between L4 and L5, but did not recommend surgery (AR 710).

On February 20, 2008, Plaintiff was seen by Donald Viscusi, M.D., for exacerbation of his back pain after he slipped and fell on the ice (AR 771). Plaintiff reported that he did not regularly take medication for his back pain other than over-the-counter medications (AR 771). On physical examination, Dr. Viscusi noted that Plaintiff had mild lower back discomfort (AR 771). He was diagnosed with exacerbation of his chronic low back pain and prescribed Celebrex (AR 771). Lumbosacral spine x-rays dated February 25, 2008 showed post-surgical changes at L4-5 and L5-S1 without evidence of acute abnormality (AR 769).

On April 22, 2008, Plaintiff was seen by Christine Brown, M.D., and requested a referral to Dr. Loesch for back pain (AR 707). Plaintiff reported back pain with left leg numbness, tingling and pain (AR 708). He reported a normal activity and energy level and denied suffering from fatigue (AR 708). On physical examination, Dr. Browne reported that while the Plaintiff used a cane, his gait was intact, and his station and posture were normal (AR 709). She found that Plaintiff had no lower paraspinal muscle tenderness or instability, and he had a full range of motion with normal strength and tone (AR 709). She further found Plaintiff had no neurological or motor deficits (706; 708-709). Plaintiff complained of depressive symptoms and sleep difficulties, but his mental status examination revealed that he was fully oriented, his mood and affect were appropriate, and his recent and remote memory were intact (AR 708-709). Dr. Brown prescribed Ambien for Plaintiff's insomnia complaints, and counseled Plaintiff regarding regular exercise, diet and weight control (AR 709).

An MRI of Plaintiff's lumbar spine dated May 15, 2008 showed some mild facet arthropathy at L2-3 and L3-4, with some possible pseudoarthrosis at L4-5 (AR 715). A CT scan showed pseudoarthrosis at the bilateral L4-5 posterolateral fusion mass (AR 717).

Plaintiff returned to Dr. Loesch on June 5, 2008, and complained of back pain (AR 739). On physical examination, Dr. Loesch found Plaintiff had some mechanical back discomfort, but no "outright neurological findings" (AR 739). He reported that Plaintiff's recent MRI showed no "new discs," his CT scan showed a successful fusion, and there were no other complications (AR 739). Dr. Loesch noted that Plaintiff "[p]robably wanted to see if [he] would take him off work", but that a functional capacity evaluation suggested he could perform sedentary work (AR 739). Dr. Loesch indicated he would be "happy" to repeat the evaluation, but believed it would not change (AR 739). Plaintiff declined a spinal cord stimulator or any other therapies, and Dr. Loesch reported there was "not a whole lot else for [him] to do" (AR 739). He did, however, inform the Plaintiff he could refer him to a physician trained in disability evaluations (AR 739).

On September 24, 2008, Plaintiff underwent an Independent Medical Examination performed by Gerard J. Werries, M.D., in connection with his workers' compensation case (AR 753-758). Plaintiff complained of "persistent back pain" with left leg pain and bilateral leg numbness, left greater than right (AR 755). Plaintiff denied suffering from any leg weakness or neurological deficits (AR 755). Plaintiff claimed that his pain was aggravated by prolonged walking, sitting and standing (AR 755). He reported that he continued to work a modified duty schedule with no lifting over twenty five pounds (AR 755). He further reported he took over-the-counter medications as needed (AR 755). On physical examination, Dr. Werries observed that while the Plaintiff walked with a cane, he was able to walk on his toes and heels without difficulty (AR 755). He found that Plaintiff had mild pain on palpation of his mid/upper lumbar region with no muscle spasm (AR 755). Plaintiff's strength was 5/5 throughout from L2-S1, he had some decreased sensation to light touch along the right S1 and left L5 dermatomes, and his reflexes were symmetric (AR 755-756). Dr. Werries found he had a negative straight leg raising test, and a negative femoral stretch test (AR 756).

Dr. Werries reviewed the Plaintiff's medical records and diagnostic studies, and diagnosed Plaintiff with lumbar spondylosis with radiculopathy and status post three lumbar spine surgeries (AR 756). He did not recommend that Plaintiff undergo any further medical or surgical treatment, and recommended that he continue with his nonsteroidal medication regimen (AR 756). Dr. Werries was of the opinion that Plaintiff could not return to his previous level of employment, but was capable of returning to work in a modified duty capacity (AR 756). He concluded that Plaintiff could sit for four hours in an eight-hour workday and stand/walk for four hours in an eight-hour workday, but needed the ability to change positions (AR 758). He further found that Plaintiff could lift and carry up to ten pounds frequently and up to twenty five pounds occasionally (AR 758). He found that while the Plaintiff would be precluded from climbing ladders, he would be able to occasionally climb stairs, kneel, squat, crawl, twist, bend at the waist and reach (AR 758).

Plaintiff returned to Dr. Viscusi on November 10, 2008 (AR 764). On physical examination, Dr. Viscusi reported that Plaintiff's range of motion was poor and he had a positive straight leg raise test bilaterally (AR 764). He found no pain on palpation, and Plaintiff's strength, sensation and reflexes were intact (AR 764). He prescribed Celebrex and indicated that Plaintiff could return to light duty status the next day (AR 764).

On July 20, 2009, Plaintiff underwent a consultative examination performed by John Kalata, D.O. (AR 784-790). Plaintiff complained of back pain and reported that he took over-the-counter medications for relief (AR 784-785). Dr. Kalata noted that Plaintiff walked slowly with a cane (AR 784). On physical examination, Dr. Kalata reported that Plaintiff's cranial nerves were intact, his reflexes were 2/4 bilaterally, and he had a full range of motion in his upper and lower extremities (AR 788). Dr. Kalata found Plaintiff was unable to toe and heel walk, but he was able to squat (AR 788). He diagnosed the Plaintiff with, *inter alia*, chronic back pain secondary to discogenic disease of the lumbar spine (AR 788).

Dr. Kalata assessed Plaintiff's ability to perform work-related physical activities, opining that Plaintiff could frequently/occasionally lift and carry up to ten pounds, and stand/walk one hour or less in an eight hour workday with an unlimited ability to sit (AR 775). Dr. Kalata

6

further opined that Plaintiff was limited in his pushing and pulling abilities with his lower extremities, and could never perform postural activities other than occasional bending, stooping or balancing and climbing (AR 775-776). He indicated that the Plaintiff had limitations with respect to heights, vibration, wetness and humidity (AR 776).

On August 17, 2009, Paul Fox, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that Plaintiff could occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, stand and/or walk for a total of two hours in an 8-hour workday, and sit for about six hours in an 8-hour workday with no limitations in pushing and pulling activities (AR 792). He further found that Plaintiff could occasionally climb, balance, stoop, and crouch, but never kneel or crawl (AR 793).

On August 18, 2009, Douglas Schiller, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had only mild limitations in completing activities of daily living or social functioning, and only mild difficulties in maintaining concentration, persistence and pace (AR 808). He found that Plaintiff was not on medication or undergoing mental health treatment, and was not limited with respect to his daily activities (AR 232). Dr. Schiller concluded that Plaintiff's mental impairment was not severe (AR 798).

Plaintiff and George Starosta, a vocational expert, testified at the hearing held by the ALJ on July 30, 2012 (AR 19-45). Plaintiff testified that he stopped working in December 2008 after he settled his workers' compensation case (AR 23). Plaintiff further testified to undergoing three back surgeries and that he used a cane to walk (AR 28). He stated that he suffered from constant low back pain that radiated down into his left leg and occasionally to his right leg (AR 28). On a scale of one to ten, Plaintiff stated that his average daily pain level was a five or six, but it decreased to a three to five when lying down (AR 29). He indicated that he had previously seen a pain specialist, but was not taking any medications at the time of the hearing (AR 27). Plaintiff stated that he used an external stimulator unit two times per week but the relief it provided did not last (AR 28). Plaintiff testified that he was able to sit for one hour, stand for one hour, walk for one hour, and lift twenty-five pounds (AR 25). He further testified that he was able to care

7

for himself, perform light cleaning, occasionally mow the lawn on a riding lawnmower, check his email on a daily basis, watch television, go out to dinner or the store once per week, and drive without any problems (AR 25-26; 36).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform sedentary work, with standing or walking limited to one hour or less, and with no more than occasional postural maneuvers such as stooping, crouching and crawling, but no kneeling, balancing or climbing (AR 41). The hypothetical further posited that the individual must also be allowed a sit/stand option, and avoid occupations that required pushing and pulling with the lower extremities and the operation of foot controls (AR 41). Finally, the individual could not be exposed to dangerous machinery, unprotected heights, and vibration (AR 41). The vocational expert testified that such an individual could perform the jobs of a telemarketer, assembler, and clerical sorter (AR 42).

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 10-18). His request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-4). He subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402

U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ concluded that Plaintiff's lumbar spondylosis with radiculopathy was a severe impairment, but determined at step three that he did not meet a listing (AR 12-13). The ALJ found that he was able to perform work at the sedentary level, except that he could only stand/walk for one hour or less in an eight-hour workday and required a sit/stand option (AR 13). The ALJ found that the Plaintiff was limited to occupations requiring no more than occasional postural maneuvers such as stooping, crouching and crawling (AR 13). The ALJ indicated that the Plaintiff was precluded from kneeling, balancing, climbing, pushing/pulling with his lower extremities, and operating foot pedals (AR 13). The ALJ further found that the Plaintiff could not be exposed to dangerous machinery, unprotected heights, and vibration (AR 13). At the final step, the ALJ concluded that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 17). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's residual functional capacity ("RFC") finding that he can perform sedentary work with certain restrictions. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making this determination, the ALJ must consider all evidence before him, *see Burnett*, 220 F.3d at 121, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence. *See* Social Security Ruling ("*SSR*") 96-5p, 1996 WL 374183 at *5.

We find that the ALJ complied with the above standards in assessing the Plaintiff's RFC and that her determination is supported by substantial evidence. The ALJ analyzed and discussed the medical evidence at length, acknowledging that the Plaintiff underwent lumbar

fusions in 2004 and 2005, and had the instrumentation in his spine removed in 2006 (AR 14). The ALJ observed however, that Plaintiff continued to work until he settled his workers' compensation claim in December 2008 (AR 14). The ALJ further observed that when Plaintiff was seen by Dr. Browne in April 2008, he complained of back pain and left leg numbness, but she found he was neurologically intact (AR 14). At Plaintiff's office visit with Dr. Loesch in June 2008, Dr. Loesch found no abnormal neurological findings (AR 14). The ALJ discussed the results of Dr. Werries physical examination findings in September 2008 (AR 14). The ALJ noted that Dr. Werries found Plaintiff was able to walk on his heels and toes without difficulty, had no significant difficulties with extension and flexion, and only some mild pain on palpation (AR 14). He also noted that Dr. Werries found no evidence of muscle spasm, and Plaintiff's reflexes were normal (AR 14). The ALJ further observed Dr. Werries found that Plaintiff exhibited good strength throughout, had some decreased sensation along the S1 and left L5, his straight leg raising test was negative, and radiologic findings of the lumbar spine showed no signs of instability (AR 14). In July 2009, Dr. Kalata noted that Plaintiff was unable to toe walk or heel walk, but he could squat and had a full range of motion (AR 14). Plaintiff's neurological examination was generally unremarkable except for some decreased reflexes (AR 15).

The ALJ observed that Drs. Loesch, Kalata, Werries and Fox all opined that Plaintiff could perform sedentary work with certain postural and/or environmental restrictions (AR 15-16). The ALJ concluded that these opinions were supported by the medical evidence and consistent with the record as a whole (AR 15-16). Thus, this is not a case where the opinions of a treating physician and/or examining physician were rejected; rather, the ALJ actually accorded great weight to these opinions. The only opinion accorded partial weight by the ALJ was the opinion of Dr. Viscusi, the Plaintiff's workers' compensation physician, who opined that Plaintiff could return to normal light duty status on November 1, 2008 (AR 16). Instead, to the Plaintiff's benefit, the ALJ limited him to a sedentary exertional level.

Finally, the ALJ discussed the Plaintiff's testimony and his claimed limitations, concluding that his allegations of severe debilitating pain were not credible (AR 14). An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those

complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a); *Hartranft*, 181 F.3d at 362. Once an ALJ concludes that a claimant has a medical condition that could reasonably produce the complained of symptoms, he or she must evaluate the intensity of the symptoms and the extent to which they impair the individual's ability to work. *Hartranft*, 181 F.3d at 362. "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id*. In assessing subjective complaints, *SSR* 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. An ALJ may reject a claim of disabling pain where he "consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

We find that the ALJ's assessment of the Plaintiff's subjective complaints of pain was consistent with the above standards. The ALJ found that Plaintiff's complaints were inconsistent with the objective diagnostic studies and clinical examination findings discussed above (AR 14-15). The ALJ found it significant that the Plaintiff had not sought any medical treatment for the past year at the time of the hearing (AR 14). Plaintiff takes issue with this finding, contending that "there is no evidence in this administrative record that any medical or clinical therapy was available to improve his condition." *See* [ECF No. 8] p. 5. Contrary to the Plaintiff's contention however, the record reflects that Plaintiff's symptoms improved with physical therapy (AR 542; 693, 697, 740), and Plaintiff reported that physical therapy and a TENS unit helped alleviate his symptoms (AR 750). Plaintiff declined a spinal cord stimulator or any other therapies suggested by Dr. Loesch (AR 739). Moreover, the regulations require an ALJ to consider the extent of any treatment a claimant has received in order to alleviate his or her symptoms in assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3)(v). An individual's statements may be deemed less

12

credible if the level and frequency of treatment is inconsistent with the level of complaints. *SSR 96-7p*, 1996 WL 374186 at *7.

The ALJ also found it significant that the Plaintiff testified he was not taking any medications for his claimed pain complaints at the time of the administrative hearing (AR 14). Plaintiff takes issue with the ALJ's finding in this regard, claiming that he interpreted the ALJ's question to encompass only prescription pain medication. *See* [ECF No. 8] p. 6. We do not find that the record supports the Plaintiff's *post hoc* interpretation:

> Q. Now, do you take any medications at all?
> A. No, ma'am.
> • • •
> Q. I'm curious why you don't use any pain medication. Could you address that?
> A. I'm allergic to opiates, which most of them are made from. I can't tolerate them.
> Q. Have you tried any over-the counter medications at all or anything like that?
> A. Tylenol, Aleve, aspirin.
> Q. You've tried those?
> A. Yes.
> Q. And do they help you at all?
> A. No.

(AR 27; 29).

The ALJ also relied upon the Plaintiff's "broad and independent" daily activities in discrediting his complaints of disabling pain (AR 14). The ALJ noted the Plaintiff testified that he performed light cleaning, occasionally mowed the lawn using a riding lawnmower, watched television, checked his email on the computer, and cared for his personal needs (although he dressed slowly and wore slip-on shoes) (AR 14). The ALJ further noted that Plaintiff could prepare foods such as sandwiches, cereal and frozen dinners, was able to shop one to three times a week, and had no problems driving (AR 14). Plaintiff claims that the ALJ erred in referencing his return to work in 2006 without noting he returned to work in a sedentary capacity with the unlimited opportunity to change positions and lie down if necessary. *See* [ECF No. 8] p. 6. We

13

find no error in this regard. Plaintiff testified that following his third surgery, he worked part-time for his employer for one year (AR 34). Plaintiff testified that he was not required to lift anything of any significance, was not required to walk any distance, was free to get up or sit down as needed, and had no specific quotas to fill (AR 34).[2] Plaintiff's description of his job duties is entirely consistent with the ALJ's RFC finding limiting him to sedentary work with, *inter alia*, a sit/stand option at will.

In sum, we find that the ALJ adequately explained her reasons for discrediting the Plaintiff's complaints of disabling pain and her findings are supported by substantial evidence. *See Hartranft*, 181 F.3d at 362 (holding that ALJ's credibility determination was supported by substantial evidence where ALJ found plaintiff's complaints about pain and other symptoms were inconsistent with the objective medical evidence, plaintiff's treatment regimen, and plaintiff's description of his daily activities).

We further reject Plaintiff's argument that the ALJ erred in relying on the vocational expert's testimony that there were a number of jobs in the national economy that he could perform, including telemarketing, clerical sorting, and assembly. *See* [ECF No. 8] p. 6. Plaintiff argues that there was no evidence from the vocational expert that these jobs provided Plaintiff the opportunity to stand up, move around, and/or "lay down if necessary." *Id*. at pp. 6-7. The record reveals, however, that the ALJ included a sit/stand limitation in her hypothetical question to the vocational expert, who specifically identified that these jobs could be performed with that limitation (AR 41-42). With respect to the Plaintiff's claim that he should be able to lie down if necessary, the ALJ is only required to accept such contention if such limitation was supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). For the reasons previously discussed, substantial evidence supports the ALJ's rejection of this claimed limitation.

The Court likewise rejects the Plaintiff's contention that the ALJ erred in relying on the vocational expert's testimony because there was "no evidence introduced regarding the availability of jobs within a reasonable radius of [the Plaintiff's] home." *See* [ECF No. 8] pp. 7-

---

[2] Plaintiff did not testify that he was allowed to lie down if necessary (AR 34).

14

8. Such evidence is not required, however, by either the Act or the regulations. *See* 42 U.S.C. § 423(d)(2)(A) (providing that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country");  20 C.F.R. § 404.1566(a) ("It does not matter whether … [w]ork exists in the immediate area in which [the claimant] live[s].").

## V.	CONCLUSION

For the reasons discussed above, Plaintiff's Motion will be denied and the Commissioner's Motion will be granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN THOMAS HALL, JR., )
                                     Plaintiff, )          Civil Action No. 12-130 Erie
       v. )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
                                   Defendant. )

## ORDER

AND NOW, this 10th day of June, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, John Thomas Hall, Jr.

The clerk is directed to mark the case closed.

                                                            s/ Sean J. McLaughlin
                                                              Chief United States District Judge

cm:     All parties of record